141 Nev., Advance Opinion 66

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

IN THE MATTER OF THE
GUARDIANSHIP OF A.L.R.-Q., A.R.W.,
AND A.M.W., MINOR PROTECTED
PERSONS.

No. 89623-COA

KELLY MICHELLE RUCKLE AND
EDWARD GORDON RUCKLE,
Appellants,
vs.
SARA Q. AND A.L.R.-Q., A.R.W., AND
A.M.W., MINOR PROTECTED
PERSONS,
Respondents.

**FILED**

DEC 23 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK



Kelly Michelle Ruckle and Edward Gordon Ruckle appeal from a district court order terminating a guardianship of minor children. Eighth Judicial District Court, Family Division, Clark County; Stacy M. Rocheleau, Judge.

*Vacated and remanded.*

Hutchison & Steffen, PLLC, and Joseph C. Reynolds and Ramez A. Ghally, Reno,
for Appellants Kelly Michelle Ruckle and Edward Gordon Ruckle.

Smith Legal Group and Kurt A. Smith, Henderson,
for Respondent Sara Q.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Royi Moas, Las Vegas,
for Respondents A.L.R.-Q., A.R.W., and A.M.W.

25-55873

BEFORE BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

*OPINION*

By the Court, WESTBROOK, J.:

In *In re Guardianship of D.M.F.*, 139 Nev. 342, 357-58, 535 P.3d 1154, 1167 (2023), the Nevada Supreme Court held that a protected minor has a procedural due process right to notice and an opportunity to be heard before the district court could sua sponte remove that minor's guardian and terminate the guardianship. In reaching that conclusion, the supreme court observed, in dicta, that this right to procedural due process also applies to the protected minor's guardian. *Id.* at 351 n.6, 535 P.3d at 1163 n.6. Because we agree with the supreme court that a custodial relative who serves as a guardian has a liberty interest in the care, custody, and management of a child under their protection, we now expressly hold that such a guardian is entitled to notice and an opportunity to be heard before a district court may sua sponte remove that guardian and terminate the guardianship.

In the proceeding below, the district court terminated the appellants' guardianship over their minor granddaughters, without adequate notice or any opportunity to be heard, after receiving two confidential reports from a reunification therapist pursuant to the Nevada Statewide Rules for Guardianship (NSRG), Rule 5. Although the district court scheduled an NSRG 5 hearing to address one of those reports, it failed to notify the parties that it was contemplating removal or termination of the guardianship, and it denied appellants any opportunity to respond to the allegations in the reports at the hearing. Because the district court violated the appellants' rights to procedural due process, we vacate the

district court's order and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Appellants Kelly and Edward Ruckle are the maternal grandmother and step-grandfather of the protected minors, respondents A.L.R.-Q., born in March 2007, A.R.W, born in August 2008, and A.M.W., born in May 2010. Ms. Ruckle is also the mother of respondent Sara Q., who is the mother of the protected minors. For most of their lives, the protected minors have alternated between living with Sara, in Pahrump, and the Ruckles, in Las Vegas.

In 2013, with Sara's consent, the Ruckles adopted Sara's eldest child, the protected minors' older sister, A.A.Q., born in December 2005. Sara also consented to the Ruckles having temporary guardianship over the protected minors at various points in time. Then, in October 2018, Sara allowed the children to move in with the Ruckles on a full-time basis.

In 2021, the Ruckles petitioned for guardianship over the children, contending that Sara lacked financial, housing, and employment stability and was unable to care for her children. Although Sara opposed the guardianship, she nevertheless wished for the children to continue living with the Ruckles. Following an evidentiary hearing, the district court found that the evidence demonstrated that the protected minors had been living with Sara in squalid conditions without regular access to food, clean clothes, or working bathroom facilities. By contrast, the court found that the children were thriving under the Ruckles' care and that the children expressed a strong desire to remain with the Ruckles on a permanent basis. Thus, in January 2022, the district court granted the Ruckles' petition for guardianship over their three granddaughters.

 

Just two months later, Sara petitioned the district court for reunification therapy and a modification of the existing visitation schedule. In her moving papers, Sara explained that she wanted to repair her relationship with her children. Although the Ruckles and the protected minors both opposed this petition, the district court issued an order in May 2022, stating that the children needed to be assessed by therapist Nick Ponzo before it could render a decision.

A year later, in May 2023, while her 2022 petition was still pending, Sara again petitioned for reunification therapy. In this petition, Sara advised the court that Ponzo had recommended reunification therapy. The Ruckles opposed this petition as well. After a hearing in July 2023, the district court granted Sara's request for reunification therapy, to include family therapy for the Ruckles, Sara, and the protected minors. Because the parties were unable to agree on a neutral family therapist, the district court chose a therapist proposed by Sara, Dr. Stephanie Holland. In August 2023, the court entered a minute order directing the parties to meet with Dr. Holland "within the next 30 days or as soon thereafter" as possible. The parties stipulated that Sara would bear the full cost of the therapy, Dr. Holland would provide both reunification therapy and family therapy, and the parties would participate in such therapy in good faith.

In December 2023, the district court received a letter from Dr. Holland indicating that the court-ordered therapy still had not yet begun.[1] According to Dr. Holland, there were ongoing disagreements between her

---

[1]NSRG 5(A) allows a district court presiding over guardianship proceedings to receive and review communications that "might otherwise be considered ex parte communications . . . if such communications raise a significant concern about a guardian's compliance with his or her statutory duties and responsibilities, or the protected person's welfare."

and the Ruckles regarding language in her informed consent agreement. Thus, Dr. Holland sought guidance from the court on how to proceed.

In January 2024, the district court issued an order pursuant to NSRG 5, disclosing Dr. Holland's letter to the parties.[2] Because Dr. Holland's letter "raise[d] concerns regarding Guardians' and Guardians' Counsel's non-compliance with the Court's directive on this matter," the court scheduled an NSRG 5 hearing to obtain the Ruckles' response.

At the NSRG 5 hearing in February 2024, the Ruckles clarified that they wanted to proceed with therapy but that they had concerns with the wording of the informed consent agreement, which they believed would allow Dr. Holland to "control" visitation, rather than simply make recommendations. The Ruckles also "worried that the therapist [was] tainted against them because of the process" and requested a different therapist. The district court advised that it would not remove Dr. Holland, clarified that Dr. Holland would only be permitted to guide and recommend visitation, and ordered the Ruckles to sign the consent agreement and begin reunification and family therapy.

From the record, it appears that A.L.R.-Q. went to live with Sara on a full-time basis in either April or May 2024, leaving only A.R.W. and A.M.W. in the Ruckles' care. Thereafter, pursuant to NSRG 5(A), Dr. Holland sent the district court a status report dated May 22, 2024. Although this confidential report was not made part of the official court

---

[2]NSRG 5(D) requires the court to "disclose any ex parte communication reviewed under subsection A of this rule, and any action taken by the court under subsection B, to the guardian, guardian ad litem, the protected person, the protected person's attorney, and all parties of record and their attorneys."

record below, nor transmitted to this court on appeal, the district court discussed the contents of the report in an order issued July 13, 2024.

In that order, the district court advised the parties that Dr. Holland's report raised a "significant concern about [the Ruckles'] compliance with their statutory duties and responsibilities to the welfare of [A.R.W. and A.M.W.], including their educational progress, relationship and reunification with their mother and sibling, and their treatment in the care of the guardians." The district court found that, because A.R.W. and A.M.W. were homeschooled, there were no objective reports available to evaluate their educational performance. Yet, the Ruckles had not responded to Dr. Holland's requests to schedule psychoeducational testing to assess A.R.W. and A.M.W. academically. The district court also found that Dr. Holland reported there were "strong indications that Ms. Ruckle's influence over the girls [was] negatively affecting their positive relationship with their mother, and that without direct orders from the Court, there will be continued roadblocks to this family's progress."

Given these findings, the district court ordered that A.R.W. and A.M.W. undergo psychoeducational testing to assess their academic progress, that they spend one weekend each month at Sara's house, that Sara would have a four-hour visit once per week, and that A.R.W. and A.M.W. would visit Sara's home for a six-hour period on the second and fourth weekends of the month. The district court also scheduled an NSRG 5 hearing[3] on July 25 to address Dr. Holland's May report.

---

[3]Although the order did not cite NSRG 5, the contents of the order demonstrate that it was entered pursuant to that rule because it referenced the language used in the rule.

One day before the scheduled hearing, Sara filed a petition to terminate the guardianship and remove the Ruckles as guardians. The petition requested both oral argument and a hearing. In particular, Sara claimed that, on July 15, 2024, Dr. Holland "filed an update"[4] with the district court advising that the Ruckles had "completely disregard[ed] the Reunification Therapist's Recommendations" and the children still had not yet participated in the court-ordered psychoeducational testing. According to Sara's petition, Dr. Holland noted "extreme concern regarding the educational environment" at the Ruckles' home and the children's academic performance. Further, Dr. Holland reported that A.L.R.-Q. was "severely behind in math and science" and had allegedly "left the Guardians' home due to a long history of alleged and documented chronic emotional and psychological abuse coupled with intermittent physical abuse at the hand of The Guardians." According to Sara, Dr. Holland also reported that "Reunification Therapy had been successful," that there was "no evidence of any concerns" regarding Sara's home environment, and that the court should "consider removing the Guardianship altogether."

Sara argued that the district court should remove the Ruckles as guardians and terminate the guardianship "[b]ased on the [Ruckles'] complete disregard for the Reunification Therapist's recommendations, refusal to timely follow the Court's Orders, emotional abuse, psychological abuse, physical abuse, and educational neglect." There is no indication that this petition was ever set for a hearing, and the court did not issue or serve

_____

[4]Although Sara's petition stated that this report was "filed" with the district court, the parties agree that Dr. Holland's July report was not made a part of the official court record below and, like the May report, it has not been provided to this court on appeal.

any citation requiring all interested parties to appear and show cause why the petition should not be granted. *Cf.* NRS 159A.1905(4); NRS 159A.1855(1)-(2).

The next day, the parties appeared for the previously scheduled NSRG 5 hearing on Dr. Holland's May report. At the beginning of the hearing, the protected minors' counsel noted a conflict of interest, but the district court indicated that such a conflict might be moot after the hearing. The district court advised that it was "very concerned about what's going on in this case" and referenced the two reports from Dr. Holland showing that "the Ruckles are not complying with their duties as guardians." In particular, the district court noted that the Ruckles were interfering in the children's relationship with Sara and their siblings, were not providing for the children's educational, physical, and emotional needs, and were ignoring Dr. Holland's recommendations. The district court further found that the children were safe with Sara and she was able to care for them.

Based on these findings, and without giving the Ruckles or the minors an opportunity to respond orally or in writing, the district court removed the Ruckles as guardians and terminated the guardianship. In doing so, the court noted it had the authority to remove the Ruckles as guardians pursuant to NRS 159A.185(1) because it found they "intentionally failed to perform any duty as provided by law or by any lawful order of the Court." And the court summarily found that Sara had been "restored to suitability" and that it was in the minors' best interests to terminate the guardianship.

Immediately after making these findings, the district court told counsel for the Ruckles, "I understand you've stood up, but I've made my orders. I am terminating the guardianship today." After ordering the

Ruckles to return various items to Sara, the district court asked the Ruckles' counsel if there was anything he "wanted to add," and counsel stated the Ruckles had a lot of concerns about Dr. Holland because she was "clearly biased throughout the case." The district court told the Ruckles' counsel that if he had any objections or concerns, he could file a motion for reconsideration but that the court was terminating the guardianship. All told, the hearing lasted only seven minutes from start to finish.

Eventually, on October 8, the district court issued its written order terminating the guardianship. The court's four-page order[5] referenced the two reports submitted by Dr. Holland and repeated its oral findings based on those reports but did not reference the relevant statutes or rules applicable to either removal of a guardian or termination of a minor guardianship. The order then instructed that the guardianship be terminated and that the letters of guardianship be revoked. This appeal followed.

## ANALYSIS

On appeal, the Ruckles primarily argue that their procedural due process rights were violated because they did not receive adequate notice that their guardianship could be terminated at the NSRG 5 hearing in July, nor were they given an opportunity to argue, present evidence, or be heard on the issue. The protected minors respond that Sara repeatedly sought reunification with her children over a period of years, such that the Ruckles were sufficiently placed on notice that both removal and

---

[5]Neither the district court nor the parties mentioned Sara's petition to terminate the guardianship during the hearing. The district court's order likewise did not identify Sara's petition as one of the matters before the court at the July 25 hearing or otherwise reference the petition.

termination were possible and they had numerous opportunities to object to the reunification between Sara and the protected minors. Sara largely joins and adopts the minors' arguments and contends that the district court's July 13 order put the Ruckles on notice that they could be removed as guardians and their guardianship could be terminated. Further, Sara disagrees that the Ruckles had any right to procedural due process. For the reasons set forth below, we conclude that the Ruckles had a procedural due process right to notice and an opportunity to respond before removal or termination of their guardianship, and the district court violated that right.[6]

This court will not disturb a guardianship determination absent an abuse of discretion. *In re Guardianship of D.M.F.*, 139 Nev. 342, 348, 535 P.3d 1154, 1161 (2023). "An abuse of discretion occurs where the district court fails to supply appropriate reasons to support the determination, 'exceeds the bounds of law or reason,' or makes an 'arbitrary or capricious' decision." *Id.* at 348-49, 535 P.3d at 1161 (internal citation omitted) (quoting *In re Eric A.L.*, 123 Nev. 26, 33, 153 P.3d 32, 36-37 (2007)). However, whether the district court violated a party's procedural due process rights in terminating a guardianship is a question of law that this court reviews de novo. *Id.* at 349, 535 P.3d at 1161.

---

[6]The parties agree on appeal that A.L.R.-Q. is now 18 years old and is no longer a minor. *See* NRS 159A.023(1). Thus, the minor guardianship matter is moot as to A.L.R.-Q. *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010); *see also* NRS 159A.191(1)(d) (stating that a guardianship is terminated "[o]n the date on which the protected minor reaches 18 years of age").

*The Ruckles were entitled to procedural due process before their removal or the termination of their guardianship over the minor children*

Both the United States and Nevada Constitutions guarantee that no person shall be deprived of a protected life, liberty, or property interest without due process of law. U.S. Const. amend. XIV, § 1; Nev. Const. art. 1, § 8(2). Thus, for the Ruckles to be entitled to procedural due process, they must first have a protected life, liberty, or property interest in their guardianship over their minor grandchildren.

In *D.M.F.*, the Nevada Supreme Court held that a protected minor had several protected interests that would be affected by a district court's decision to sua sponte remove their guardian. 139 Nev. at 350-51, 535 P.3d at 1162. Those interests include the minor's interests in autonomy, familial companionship, a parent-child relationship with a parent who consented to the guardianship, and the guardian-child relationship with a custodial relative. *Id.*

Although the supreme court primarily addressed the due process rights of the protected minor in *D.M.F.*, the court also observed in dicta that "a guardian has a liberty interest in the care, custody, and management of a child under their protection akin to, but not entirely coextensive with, the rights of a parent." *Id.* at 351, 535 P.3d at 1162. For support, the court relied on *Simuro v. Shedd*, 176 F. Supp. 3d 358, 384 (D. Vt. 2016), where the United States District Court for the District of Vermont observed that *both* "parents and guardians of minor children have protected interests in the care, control, and custody of those children." *See D.M.F.*, 139 Nev. at 351, 535 P.3d at 1162.

The supreme court also relied on *Rivera v. Marcus*, 696 F.2d 1016, 1024-25 (2d Cir. 1982), which recognized that custodial relatives have a "liberty interest in preserving the integrity and stability" of the family and

are "entitled to due process protections when the state decides to remove a dependent relative from the family environment." *See D.M.F.*, 139 Nev. at 351, 535 P.3d at 1162. As a result, the court opined that the protected minor's grandmother, who had served as her guardian from birth, also had a liberty interest in the minor's guardianship and care such that *the grandmother's* procedural due process rights were impacted when the court removed her as guardian and terminated the guardianship. *Id.* at 351 n.6, 535 P.3d at 1163 n.6. Guided by the supreme court's analysis in *D.M.F*, we conclude that the Ruckles, in their capacity as both custodial relatives and guardians, also had a procedural due process right to notice and an opportunity to be heard in connection with the district court's decision to terminate the guardianship.[7]

*The Ruckles were not provided adequate notice that removal or termination would be considered at the July 25 hearing*

Having concluded that the Ruckles were entitled to procedural due process, we must now determine whether the Ruckles received adequate notice and an opportunity to respond. We address notice first. "Notice is sufficient to satisfy due process where it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 351, 535 P.3d at 1163 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "Generally, notice must be given before a party's substantive rights are affected." *Id.* at 351-52, 535 P.3d at 1163.

---

[7]We express no opinion as to the extent of any substantive due process rights available to guardians in these circumstances, only that the potential of their substantive rights being affected necessitates notice and an opportunity to be heard.

In both *D.M.F.* and *In re Guardianship of Jones*, 139 Nev. 139, 147-48, 531 P.3d 1236, 1244-45 (2023), the Nevada Supreme Court evaluated the sufficiency of notice where district courts sua sponte removed court-appointed guardians. In *D.M.F.*, the supreme court concluded that a district court's order setting an NSRG 5 hearing "did not give proper notice that it was contemplating removal and termination [of a minor guardianship] such that the parties had a meaningful opportunity to be heard on the issue." 139 Nev. at 342, 535 P.3d at 1157. However, in *Jones*, the supreme court reached the opposite conclusion, determining that an adult protected person had ample notice that her guardian of choice could be removed and had multiple opportunities to respond based on the nature of the filings and arguments made in the district court. 139 Nev. at 147-48, 531 P.3d at 1244-45. The Ruckles argue that this case is analogous to *D.M.F.*, whereas Sara and the protected minors contend that this case is more akin to *Jones*.

After reviewing both decisions, we conclude that this case is more like *D.M.F.* than *Jones* because the district court's NSRG 5 order did not give a clear indication that removal or termination would be considered at the July 25 hearing. Although the district court's July 13 order noted "significant concern" about the Ruckles' compliance with their statutory duties and responsibilities to the minors, it did not signal the serious step of removal and termination such as directions to investigate potential substitute guardians or the necessity for the guardianship. The order identified several concerns raised by Dr. Holland, including that A.L.R.-Q. had made statements "regarding the educational environment in the Ruckles' home" that necessitated psychoeducational testing; that the Ruckles were not cooperating with Dr. Holland's efforts to conduct that

testing; and that "Ms. Ruckle's influence over the girls [was] negatively affecting [the protected minors'] positive relationship with their mother." But instead of advising the Ruckles that it was considering removal or termination to address these concerns, the district court merely directed the Ruckles to schedule A.R.W. and A.M.W. for psychoeducational testing with Dr. Holland, provided Sara with additional parenting time with the girls, and set an NSRG 5 hearing "concerning the issues raised by Dr. Holland's report." Thus, as in *D.M.F.*, the district court's notice was insufficient to satisfy procedural due process.

Nevertheless, Sara and the protected minors urge this court to look beyond the deficient July 13 order and find the Ruckles had notice that removal and termination were on the table because there had been years of reunification efforts and because the Ruckles were aware of, objected to, and obstructed reunification. Sara and the protected minors argue that, as in *Jones*, the nature of the district court filings and arguments regarding reunification sufficed to place the Ruckles on notice they could be removed and the guardianship terminated. We disagree.

In *Jones*, the respondents filed two petitions seeking visitation with their mother, an adult protected person who was under the guardianship of their sister. 139 Nev. at 140, 531 P.3d at 1240. In the first petition, the respondents raised concerns that their sister was improperly restricting access to their mother; and in the second petition, respondents sought additional visitation and asked the district court to consider "removing [their sister] as guardian if she disobeyed any court-ordered" visitation. *Id.* Thereafter, the district court entered an order that referenced the respondents' allegations and advised that "[i]f access has been restricted, a relative may ask the court for access to the protected

person *or to remove the guardian.*" *Id.* at 141, 531 P.3d at 1240 (emphasis added). The court also directed the parties to file pretrial memoranda addressing, among other statutes, NRS 159.335, which "warns that a guardian who improperly restricts communications and access to the protected person '*is subject to removal.*'" *Id.* at 147, 531 P.3d at 1244 (quoting NRS 159.335(2)) (emphasis added); *accord id.* at 140-41, 531 P.3d at 1240.

Thereafter, the district court conducted an evidentiary hearing where five witnesses testified about how the guardian was restricting access to the adult protected person. *Id.* at 141, 531 P.3d at 1240-41. Both at the hearing and in a post-hearing brief, the respondents again asked for their sister to be removed as guardian. *Id.* at 148, 531 P.3d at 1245. Then, while awaiting the district court's decision, the respondents objected to an accounting filed by the guardian and again asked the court to "sua sponte remove" their sister as guardian. *Id.* at 142, 531 P.3d at 1241. On that record, the supreme court determined that the "cumulative effect of these multiple references, coupled with the district court's own statements, leaves little doubt that [the adult protected person] had notice that the removal of [her daughter] as guardian was open for consideration by the court." *Id.* at 147, 531 P.3d at 1244.

This case is nothing like *Jones.* Although Sara petitioned twice for reunification therapy[8]—once in 2022 and again in 2023—nowhere in

_____

[8]Reunification therapy is intended to repair damaged relationships between parents and children. *See, e.g.,* Jan B. Gilman-Tepper & Sandra Morgan Little, *Children Who "Lose" a Parent: Advice from the Experts on Successful Reunification,* 38 Fam. Advoc. 32, 34 (Summer 2015) (explaining that the "definition of reunification therapy is to help reconnect parents and children, often ordered by the family court after a parent asks for court

those petitions did she allude to or request that the Ruckles' guardianship be terminated, nor allege facts regarding the Ruckles' conduct as guardians that could justify removing them as guardians. To the contrary, when arguing in favor of reunification therapy at a hearing in July 2023, Sara told the district court, "we're not asking to put the girls back in Pahrump with mom. We're asking for reunification therapy." Sara explained that her goal in requesting reunification therapy was to "normalize [her] relationships" with her children and have "some expanded visitation, if appropriate." Further, unlike in *Jones*, none of the district court's prior orders contained any language that referenced the possibility of the Ruckles' removal or termination as guardians. The first time the district court ever mentioned the possibility of removal or termination was at the July 25 hearing where the final decision was made.

While Sara did ultimately file a petition to remove the Ruckles and terminate the guardianship on July 24, her belated filing did not provide the Ruckles with adequate notice that removal and termination of the guardianship would be considered at the July 25 hearing. Sara filed her petition just one day prior to the scheduled hearing, and the district court did not issue the required citations directing the Ruckles and all interested parties to show cause why the court should not remove them as guardians and terminate the guardianship. *See* NRS 159A.1855(1)-(2) (requiring the court to issue a citation upon the filing of a petition for removal of a guardian that requires that the guardian "appear and show cause why the

_____

assistance to reestablish a relationship with their children"); *Lanzana v. Duplan*, No. A-2183-15T2, 2017 WL 1166451, at *10 (N.J. Super. Ct. App. Div. Mar. 29, 2017) (explaining that "reunification therapy is designed to treat a psychological condition or dysfunctional family relationship, such as those which arise from parental alienation or abuse").

court should not remove the guardian"); NRS 159A.1905(4) (requiring the court to issue a citation upon the filing of a petition for termination of a guardianship "requiring all interested persons to appear and show cause why termination or modification of the guardianship should not be granted").

Had the court issued the requisite citations, the Ruckles would have been apprised of the possibility of removal and termination of the guardianship. Yet, there is no indication in the record that the Ruckles were notified that Sara's petition or the specific claims raised therein would be considered at the hearing.[9] As a result, we cannot say that the Ruckles received sufficient notice in advance of the hearing to satisfy procedural due process.

*The Ruckles were not provided a meaningful opportunity to be heard prior to their removal and the termination of the guardianship*

Furthermore, even if the Ruckles had received adequate notice that both removal and termination of the guardianship would be considered at the July 25 hearing, they were not provided with a meaningful opportunity to be heard on those issues. As the supreme court explained in *D.M.F.*, when the court is considering removal of a minor's guardian and termination of the guardianship, "[a] full and fair hearing requires that the change in custody be supported by factual evidence and the party threatened with the loss of parental rights must be given the opportunity to

---

[9]As noted previously, there is nothing in the hearing transcript or the district court's order terminating the guardianship to suggest that the court considered or otherwise relied on Sara's petition in making its decision. Instead, the record demonstrates that the district court decided, sua sponte, to terminate the Ruckles' guardianship at the July 25 hearing.

rebut the evidence presented against them."[10] *Id.* at 353, 535 P.3d at 1164. Unlike in *Jones*, where the district court permitted briefing and an evidentiary hearing before removing the guardian, the district court here did not direct any briefing and did not hold any evidentiary hearing. Moreover, the district court did not request or allow any argument before making its ruling at the hearing. Instead, the district court *began* the hearing by informing the protected minors' counsel that his services may not be needed going forward and ordering that the Ruckles be removed as guardians and that the guardianship be terminated; when the Ruckles' counsel attempted to interject, the district court abruptly stated, "I understand you've stood up, *but I've already made my orders. I am terminating the guardianship today.*" (Emphasis added.) And even if the district court had heard argument or taken evidence, the district court's failure to provide adequate notice of the purpose of the hearing impaired the Ruckles' ability to address the district court's concerns in a meaningful manner. *See D.M.F.*, 139 Nev. at 354, 535 P.3d at 1165 (explaining that procedural due process requires an opportunity to be heard in a meaningful

---

[10]At oral argument, Sara argued that under *Deegan v. Deegan*, 22 Nev. 185, 37 P. 60 (1894), a minor guardianship can be terminated without an evidentiary hearing. Because this argument was raised for the first time at oral argument, we need not consider it. *See Rives v. Ferris*, 138 Nev. 138, 146 n.6, 506 P.3d 1064, 1071 n.6 (2022). Nevertheless, we note that *Deegan*, which was decided more than a century prior to the supreme court's decision in *D.M.F.*, did not address whether procedural due process required an evidentiary hearing before the termination of a minor guardianship; rather, the court merely "held that a guardian statute provided the court with sua sponte authority to remove a guardian, without notice, after the district court asked for corrected accounting, but none was provided." *Jones*, 139 Nev. at 144 n.3, 531 P.3d at 1242 n.3 (discussing the court's holding in *Deegan*).

manner and stating, "the parties could not appropriately address the issues of removal and termination" given the lack of clarity as to the purpose of the hearing).

Although we conclude that the Ruckles were not provided adequate notice or a meaningful opportunity to be heard on the issues of removal and termination, we note that this case differs from *D.M.F.* in two crucial respects that impact the relief we provide in resolving this matter. First, the district court had access to two confidential reports that appear to contain recommendations and conclusions regarding the Ruckles' suitability as guardians, the children's health and welfare, and Sara's suitability as a parent. *Cf. D.M.F.*, 139 Nev. at 353-54, 535 P.3d at 1164 (noting that the investigator's report "provided no recommendations or conclusions regarding [the guardian's] suitability or [the protected minor's] health and welfare, thus giving no indication of the case . . . regarding the need to remove [the grandmother] as guardian and terminate [the] guardianship"). And while the district court relied on these reports in terminating the guardianship, the Ruckles failed to ensure these reports were included as part of the record on appeal.[11] Thus, we presume for

---

[11]The parties agree that Dr. Holland's confidential reports were never made part of the official district court record below and may instead have been "left-side filed" with the court to maintain their confidentiality. While the Ruckles contend that they were unable to include those reports in the record on appeal, we disagree. As recently amended, NRAP 10(c)(2) now allows litigants to correct or modify the district court record to include "anything material to either party [that] is omitted from or misstated from the record" in three instances: "(A) on stipulation of the parties; (B) on order of the district court; or (C) on order of the Supreme Court or Court of Appeals." Without question, Dr. Holland's reports were material to all parties, and the Ruckles could have utilized NRAP 10(c) to modify the record to include them.

purposes of this appeal that the representations contained in the record concerning the contents of those reports are accurate. *Cf. Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) ("When an appellant fails to include necessary documentation in the record, we necessarily presume that the missing portion supports the district court's decision.").

Second, unlike in *D.M.F.*, the record contains Sara's petition for removal and termination of the guardianship, which relied on those reports.[12] As noted above, Sara's petition referenced several concerning findings that Dr. Holland allegedly made in her second report, including that A.L.R.-Q. left the Ruckles' home "due to a long history of alleged and documented chronic emotional and psychological abuse coupled with intermittent physical abuse" and that Ms. Ruckle "acknowledged on May 3, 2024, that she has engaged in physical acts of maltreatment abuse of the Children." Sara's petition represented that Dr. Holland found A.L.R.-Q. to be "severely behind in math and science" and had "extreme concern regarding the educational environment at the Guardians' Home." According to the petition, Dr. Holland also reported that the Ruckles were not complying with the district court's orders. Finally, Dr. Holland reportedly found that "[r]eunification [t]herapy has been successful" and "[t]here is no evidence of any concerns regarding Mom, Mom's home environment, or the person living in Mom's home." If true, these allegations *could* support both removal and termination of the minor guardianship.

---

[12]While the district court terminated the guardianship sua sponte, given the absence of Dr. Holland's reports from the record on appeal, Sara's petition is nonetheless pertinent to our review of this matter to the extent that it references the evidence the court seemingly had before it in making its decision.

*See, e.g.,* NRS 159A.185(1)(f) (stating that a court may remove a guardian if the court determines "[t]he guardian has intentionally failed to perform any duty as provided by law or by any lawful order of the court, regardless of injury"); NRS 159A.191(1)(c) (stating that a court may terminate a guardianship "[u]pon order of the court, if the court determines that the guardianship is no longer necessary"). In light of these important distinctions and the unique circumstances of this case, we decline to simply reverse and remand the district court's order terminating the guardianship as was done in *D.M.F.*

Instead, to remedy the district court's violation of the Ruckles' due process rights, we vacate the district court's order and remand this matter to the district court for further proceedings. On remand, we direct the court to permit briefing and hold an evidentiary hearing to determine whether removal or termination are appropriate in light of Dr. Holland's confidential reports. *Cf. Goad v. State*, 137 Nev. 167, 185, 488 P.3d 646, 662 (Ct. App. 2021) (vacating a judgment of conviction and remanding for a retrospective competency hearing where the district court violated the defendant's procedural due process right to a competency hearing before standing trial). Further, because more than a year has passed since the district court's decision, and circumstances may have changed, the court may consider facts and evidence that post-date the decision on appeal. Finally, in light of the concerning allegations raised in Sara's petition for removal and termination, we elect to maintain the current custodial arrangement, such that Sara will retain both physical and legal custody of the minor children pending a final decision by the district court on

remand.[13] *See Davis v. Ewalefo*, 131 Nev. 445, 455, 352 P.3d 1139, 1146 (2015) (leaving certain provisions of a custody order in place pending further proceedings on remand).

We also note that the district court's order did not contain the specific findings necessary to support either removal or termination of the guardianship in response to Dr. Holland's NSRG 5 communications. As explained in *D.M.F.*, before a district court may sua sponte remove a guardian based on an NSRG 5 communication, the court must "first determine whether one of the enumerated conditions for removal under NRS 159A.185(1) exists and, if so, conduct a best-interests-of-the-child analysis" by addressing the mandatory best interest factors in NRS 159A.186(2). 139 Nev. at 355-56, 535 P.3d at 1165-66. Likewise, under NSRG 10(A), a district court "shall *not* terminate the guardianship . . . without making specific findings as to: 1. [t]he protected person's current health and welfare; 2. [t]he reasons a guardianship does or does not remain necessary, including identifying the existence of less-restrictive alternatives; and 3. [w]hether maintaining the guardianship would serve the protected person's best interests." Should the district court, after briefing and a hearing, conclude that removal or termination is appropriate, the court must make the necessary findings and address the mandatory factors set forth in the applicable statutes and rules.[14]

---

[13]Nothing in this decision prohibits the district court from entering temporary or emergency orders or otherwise modifying the current custody arrangement as needed "to comport with current circumstances." *See Davis*, 131 Nev. at 455, 352 P.3d at 1146.

[14]Insofar as the parties have raised other arguments not specifically addressed in this order, we have considered the same and conclude that

## CONCLUSION

As custodial relatives who served as guardians to their minor grandchildren, the Ruckles had a liberty interest in the care, custody, and management of those children. In that capacity, they were entitled to notice and an opportunity to be heard before the district court could sua sponte remove them as guardians and terminate their guardianship. In the proceedings below, the district court violated the Ruckles' procedural due process rights when it terminated their minor guardianship without adequate notice or any meaningful opportunity to be heard. Accordingly, we vacate the district court's order and remand for proceedings consistent with this opinion.

_____, J.
Westbrook

We concur:

_____, C.J.
Bulla

_____, J.
Gibbons

---

they do not present a basis for relief or need not be reached given the disposition of this appeal.

